(No. 59239.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PAUL HEINRICH, Appellee.

*Opinion filed September 20, 1984.—Rehearing denied November 30, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Linda Welge, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel, and Kenneth R. Baumgarten, law student), for the People.

John Tielsch, of Bloomingdale, William Marshall, of Williamsburg, Virginia, and Jeffrey M. Shaman, of Chicago (Donald Burak, Laura Kerton, Frank Lang, and Joyce Olin, of Chicago, law students), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Paul Heinrich, was charged by information in McLean County with two counts of criminal defamation under the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 27—1). He moved to dismiss the information, and after a hearing, the circuit court declared

the criminal defamation statute unconstitutional and dismissed the charges. The court held the statute contravened the first and fourteenth amendments to the United States Constitution. The State appeals directly to this court pursuant to our Rule 603 (87 Ill. 2d R. 603).

This appeal posits three questions to be resolved: (1) Is section 27—1 of the Criminal Code of 1961 overly broad? (2) Is section 27—2 unconstitutional in that it does not allow truth to be an absolute defense in a criminal defamation prosecution? and (3) Can the alleged infirmity be cured by severing section 27—2?

In count I of the information, the State alleged that the defendant, while acting with the intent to defame the complainant, communicated to members of the general public matters which tended to provoke a breach of the peace. The defendant distributed this material by mailing and by posting, in public view, a leaflet. More specifically, the leaflet stated that the complainant was an unfit mother due to her promiscuity, deviate sexual behavior, illicit drug habit, and four pregnancies out of wedlock. The leaflet further stated that the woman's first pregnancy, which resulted in the birth of her daughter, was followed by two clinical abortions and a miscarriage. A picture of the complainant appeared in the upper right-hand corner of the leaflet, with her name in large type underneath it. The leaflet also named the complainant's parents and gave their address. The names of the complainant, both her parents and her daughter were all emphasized in large type wherever they appeared in the leaflet. This leaflet urged concerned citizens to contact their local church groups or the Illinois Department of Children and Family Services in order to help protect the complainant's "bastard child" from her mother's "deviate moral behavior."

In count II of the information the State alleged that defendant, with the intent to defame, communicated to

the complainant's mother, by letter, matter which tended to provoke a breach of the peace. The letter described the complainant as a whore, a ruined woman, and a girl who had been excommunicated from the Catholic church for murdering human life. The letter also venomously attacked the complainant's mother, calling her the "mother of a whore" the "grandmother of a bastard," and "white trash." A copy of the leaflet, described in count I, was enclosed with the letter. The defendant signed the letter and in closing stated:

"I hope to God you take me to court for distributing the enclosed newsletter ***.

Better yet, come after me and you can rot in jail for the rest of your miserable life."

The State contends that section 27—1 of the criminal defamation statute, under which this defendant was charged, is constitutional as it is designed to reach only those words tending to cause a breach of the peace. The State further argues that section 27—2 of the statute (Ill. Rev. Stat. 1981, ch. 38, par. 27—2), which provides for the defense of truth when the alleged defamation is published with good motives and for justifiable ends, does not conflict with a defendant's first amendment rights in the discrete area of private defamation. Alternatively, if this court finds section 27—2 objectionable, the State suggests that we sever only that portion and retain section 27—1.

The defendant maintains that the criminal defamation statute is overly broad. He posits that a tendency to breach the peace is a justification for regulating speech only when the resultant breach of the peace is imminent. Since there is no requirement of immediacy in section 27—1, the defendant requests our affirmance of the trial court's dismissal. In the event that we do not find section 27—1 invalid, the defendant submits that section 27—2 renders the entire statute unconstitutional because

it does not allow truth to be an absolute defense in a criminal defamation prosecution. According to the defendant, section 27—2 is not severable.

The trial court did not make an explicit finding that the statute was too broad, as defense counsel had urged. Rather, it ruled the statute unconstitutional on the basis of the qualified-truth defense contained in section 27—2. The court further found that the offending portion of the statute could not be severed, thereby saving section 27—1. The court reasoned that to do so would be tantamount to redrafting the criminal defamation statute in accordance with first amendment requirements. Although the trial court ultimately rejected severance as a viable alternative to striking the entire statute, the court's reasoning implies that section 27—1, itself, was not constitutionally overly broad. We agree.

The historical justification for criminal libel has been its tendency to provoke a breach of the peace. (*Garrison v. Louisiana* (1964), 379 U.S. 64, 67-68; 13 L. Ed. 2d 125, 129, 85 S. Ct. 209, 212; *Beauharnais v. Illinois* (1952), 343 U.S. 250, 254, 96 L. Ed. 919, 926, 72 S. Ct. 725, 729; *People v. Spielman* (1925), 318 Ill. 482, 489.) The legislation in question incorporates this rationale as it provides:

"Sec. 27—1. Elements of the Offense.

(a) A person commits criminal defamation when, with intent to defame another, living or dead, he communicates by any means to any person matter *which tends to provoke a breach of the peace.*" (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 27—1.

From the language of the statute itself, as well as the committee comments which follow and explain the statute, it is clear that the legislature intended section 27—1 to apply only to those words having a direct tendency to cause acts of violence.

The committee comments to section 27—1 state:

"The section specifically requires that the defamatory matter tend to provoke a breach of the peace. The utterance need not actually provoke violence or criminal acts, but it is sufficient if it tends to do so. *** The inclusion of this element removes from the criminal area any defamatory conduct which does not tend to incite crime even though that conduct may seriously injure reputation." (Ill. Ann. Stat., ch. 38, par. 27—1, Committee Comments, at 173 (Smith-Hurd 1977).)

Further, the comments specifically characterize the type of communication that is proscribed by section 27—1 as "fighting words" and refers the reader to *Beauharnais v. Illinois* (1952), 343 U.S. 250, 96 L. Ed. 919, 72 S. Ct. 725.

In *Beauharnais,* the defendant was convicted under section 224a of the Criminal Code of 1874 (Ill. Rev. Stat. 1949, ch. 38, par. 471) (repealed by act approved July 28, 1961). That statute, which immediately preceded the one currently under review, criminalized the exhibition in any public place of matter which portrayed, "depravity, criminality, unchastity, or lack of virtue of a class of citizens, of any race, color, creed or religion which *** expose[d] the citizens of any race, color, creed or religion to contempt, derision, or obloquy or which [was] productive of [a] breach of the peace or riots." (Ill. Rev. Stat. 1949, ch. 38, par. 471.) This court described the former statute as a form of criminal libel law and found that "[a] mere reading of the libelous publication in question *** refers to Negroes as a class possessing various criminal tendencies, unchastity, and degrading sexual inclinations, all of which are 'fighting words' liable to cause violence and disorder between the races." *People v. Beauharnais* (1951), 408 Ill. 512, 517.

The United States Supreme Court affirmed the judgment of this court in *Beauharnais v. Illinois,* stating:

" 'There are certain well-defined and narrowly limited

classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite to an *immediate breach* of the peace. \*\*\*' " (Emphasis added.) 343 U.S. 250, 255-56, 96 L. Ed. 919, 926-27, 72 S. Ct. 725, 730-31.

Although the court in *Beauharnais* stated that libelous words were outside the protection of the first amendment, subsequent Supreme Court decisions evidence that the guarantees of the first amendment do place some limitation on a State's power to proscribe defamation. (See *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (civil); *Garrison v. Louisiana* (1964), 379 U.S. 64, 13 L. Ed. 2d 125, 85 S. Ct. 209 (criminal); *Gertz v. Welch* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (civil).) The extent of these limitations will be discussed below. At this point, it suffices to note that the reference to *Beauharnais* in the committee comments to section 27—1 concerns the use "fighting words" not "libelous" words. Although *Beauharnais* has been criticized in regard to statements therein concerning libel (see *Collin v. Smith* (7th Cir. 1978), 578 F.2d 1197, 1205; *United States v. Handler* (Md. 1974), 383 F. Supp. 1267, 1277; *Tollett v. United States* (8th Cir. 1973), 485 F.2d 1087, 1094 n.14; *Anti-Defamation League of B'nai B'rith v. Federal Communications Com.* (D.C. Cir. 1968), 403 F.2d 169, 174 n.5), the court's position on "fighting words" appears to have retained validity. *Cohen v. California* (1971), 403 U.S. 15, 20, 29 L. Ed. 2d 284, 291, 91 S. Ct. 1780, 1785-86. See generally Annot., *Supreme Court's View As To The Protection Or Lack Of Protection, Under The Federal Constitution, Of The Utterance Of "Fighting Words,"* 39 L. Ed. 2d 925 (1974).

In discussing the protection afforded "fighting words," the *Beauharnais* court stated:

"'*** It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. *"Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."* [Citation.]' " (Emphasis added.) *Beauharnais v. Illinois* (1952), 343 U.S. 250, 256-57, 96 L. Ed. 919, 927, 72 S. Ct. 725, 731.

The reference to *Beauharnais* in the committee comments, then, makes plain the legislative intent that section 27—1 applies only to "fighting words." Such "fighting" words are those personally abusive epithets which, when addressed to an ordinary citizen, as a matter of common knowledge, are inherently likely to provoke violent reaction. (*Cohen v. California* (1971), 403 U.S. 15, 20, 29 L. Ed. 2d 284, 291, 91 S. Ct. 1780, 1785-86.) Under this construction, the statute in question is not overly broad, as it applies only to those words which by their very utterance tend to incite an *immediate* breach of the peace. (*Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 571-72, 86 L. Ed. 1031, 1035, 62 S. Ct. 766, 769; *Cantwell v. Connecticut* (1940), 310 U.S. 296, 309-10, 84 L. Ed. 1213, 1220-21, 60 S. Ct. 900, 905-06.) We turn, therefore, to the second question presented.

Section 27—2 of the Criminal Code of 1961 provides: "In all prosecutions for criminal defamation, the truth, when communicated with good motives, and for justifiable ends, shall be an affirmative defense." (Ill. Rev. Stat. 1981, ch. 38, par. 27—2.) The existence of section 27—2 in the Criminal Code is mandated by the requirements of article I, section 4, of the Illinois Constitution.

The Constitution requires that "[i]n trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense." (Ill. Const. 1970, art. I, sec. 4 (the same provision was contained in article II, section 4, of the 1870 Illinois Constitution).) As a result, these provisions constitute an affirmative defense wherein the defendant bears the burden of proving not only the truth of the defamatory statement, but also that it was uttered with good motives and for a justifiable end. (*People v. Taylor* (1917), 279 Ill. 481, 482; *People v. Fuller* (1909), 238 Ill. 116, 133; *City of Chicago v. Lambert* (1964), 47 Ill. App. 2d 151, 163.) The defendant contends that conditioning the defense of truth on the presence of these additional requirements is inconsistent with the holdings of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, and subsequent Supreme Court cases. As noted above, the trial court agreed with the defendant and declared the entire criminal defamation statute (Ill. Rev. Stat. 1981, ch. 38, par. 27–1 *et seq.*) unconstitutional on that basis. For the reasons that follow, we believe the trial court erred.

In *New York Times*, the court required a showing of "actual malice" in a *civil* defamation action where the defamatory statement concerned a public official and related to his official conduct. Actual malice was defined, therein, as knowledge of falsity or reckless disregard of truth or falsity. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) Under the *Times* standard, the burden is on the "public official" plaintiff to plead and prove either knowing falsity or reckless disregard for the truth. Consequently, where the *Times* standard applies, the inconsistent burden of proving truth, good motives and justifiable ends may not be placed upon the defendant. See *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, 290.

The holding of *New York Times* was extended to the area of *criminal* defamation in *Garrison v. Louisiana* (1964), 379 U.S. 64, 13 L. Ed. 2d 125, 85 S. Ct. 209. In *Garrison,* the court held that, despite the differing history and purpose of criminal libel, the *New York Times* rule applied to criminal defamation as well as civil and, thus, limited a State's power to impose criminal sanctions for criticism of a public official. As the court stated:

> "Where criticism of public officials is concerned, we see no merit in the argument that criminal libel statutes serve interests distinct from those secured by civil libel laws, and therefore should not be subject to the same limitations." *Garrison v. Louisiana* (1964), 379 U.S. 64, 67, 13 L. Ed. 2d 125, 129, 85 S. Ct. 209, 212.

Applying the *New York Times* rule, the court in *Garrison* struck down a Louisiana statute which, like the statute presently under review, conditioned the defense of truth on the presence of good motives and justifiable ends. After discussing the importance of open debate, where the conduct of a public official is concerned, the court announced:

> "Truth may not be the subject of either civil or criminal sanctions *where discussion of public affairs is concerned.*" (Emphasis added.) *Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 13 L. Ed. 2d 125, 133, 85 S. Ct. 209, 216.

In extending the *New York Times* rule to criminal defamation, the court expressly reserved judgment on whether the defense of truth could be limited by the additional requirements of good motives and justifiable ends where the defamation was one in which the public had no interest. (*Garrison v. Louisiana* (1964), 379 U.S. 64, 72, 13 L. Ed. 2d 125, 131, 85 S. Ct. 209, 214-15.) The court specifically stated:

> "We recognize that different interests may be involved where purely private libels, totally unrelated to public af-

fairs, are concerned; therefore, nothing we say today is to be taken as intimating any views as to the impact of the constitutional guarantees in the discrete area of purely private libels." *Garrison v. Louisiana* (1964), 379 U.S. 64, 72 n.8, 13 L. Ed. 2d 125, 131 n.8, 85 S. Ct. 209, 215 n.8.

The court subsequently addressed the constitutional limitations placed on private defamation actions in *Gertz v. Welch* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997. In *Gertz,* the court held that so long as the States do not impose liability without fault, they may define for themselves the appropriate standard of liability for defamatory falsehoods injurious to a private individual. (418 U.S. 323, 347, 41 L. Ed. 2d 789, 809, 94 S. Ct. 2997, 3010.) In so holding, the court noted that private individuals are more vulnerable to reputational injury than public officials or public figures and, therefore, found that the State's interest in protecting them was correspondingly greater. (418 U.S. 323, 344, 41 L. Ed. 2d 789, 808, 94 S. Ct. 2997, 3009.) Thus, under *Gertz,* the States were free to select their own standard of liability and were not limited by the strict *New York Times* standard of "knowing falsity" or "reckless disregard of truth or falsity," at least as far as compensatory damages in civil actions were concerned. See *Troman v. Wood* (1975), 62 Ill. 2d 184.

However, where the private plaintiff in a civil defamation action seeks punitive damages, *Gertz* requires a showing of knowing falsity or reckless disregard for the truth. (*Gertz v. Welch* (1974), 418 U.S. 323, 349, 41 L. Ed. 2d 789, 810, 94 S. Ct. 2997, 3011.) Punitive damages were defined in *Gertz* as "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." 418 U.S. 323, 350, 41 L. Ed., 2d 789, 811, 94 S. Ct. 2997, 3012.

The defendant suggests that punitive damages are

the civil counterpart to criminal sanctions. Since an award of punitive damages in a civil action is conditioned on the private plaintiff satisfying the rigid *New York Times* standard, the defendant contends that criminal sanctions for private defamation cannot be imposed on less. Further, the defendant argues that truth must be an absolute defense in a criminal defamation prosecution concerning a private citizen, because *Gertz* explicitly conditions the imposition of such liability on "falsehood." 418 U.S. 323, 347, 41 L. Ed. 2d 789, 809, 94 S. Ct. 2997, 3010.

However, the Supreme Court has never gone so far as to require that truth be an absolute defense in a private defamation action. The court made this very clear in *Cox Broadcasting Corp. v. Cohn* (1975), 420 U.S. 469, 43 L. Ed. 2d 328, 95 S. Ct. 1029. In *Cox,* the court acknowledged that it had "carefully left open the question whether the First and Fourteenth Amendments require that truth be recognized as a defense in a defamation action brought by a private person as distinguished from a public official or public figure." (420 U.S. 469, 490, 43 L. Ed. 2d 328, 347, 95 S. Ct. 1029, 1044.) The fact that the above quotation is extracted from an opinion rendered after *Gertz* persuades us that the defendant has overstated the *Gertz* holding.

Further, the trial court found the statute unconstitutional, stating that this "inescapable conclusion is borne out by the decisions of every State court having occasion to consider the constitutionality of a similar provision." Yet, the cases relied upon by the trial court concerned criminal defamation prosecutions regarding either public officials, public figures, or matters of public interest. (*Weston v. State* (1975), 258 Ark. 707, 528 S.W.2d 412 (public official); *Eberle v. Municipal Court* (1976), 55 Cal. App. 3d 423, 127 Cal. Rptr. 594 (public figure); *Commonwealth v. Armao* (1972), 446 Pa. 325, 286 A.2d

626 (public interest); *Gottschalk v. State* (Alaska 1978), 575 P.2d 289 (public official).) As such, those cases involved a straightforward application of *Garrison.*

The case at bar presents a different question, as there is no suggestion that the complainant herein is either a public official or public figure. Since the guarantees of the first and fourteenth amendments have never required that truth be an absolute defense in a prosecution for criminal defamation of a private person, we find no constitutional infirmity in the application of section 27—2 to the case at bar. Consequently, we need not reach the issue of severability which was raised by the State.

For the reasons given, the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*