NO. 4-95-0156

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Schuyler County

LOYD DALE ALLEN, ) No. 94CM12

Defendant-Appellant. )

) Honorable

) Carson D. Klitz,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Following a bench trial, defendant Loyd Dale Allen was found guilty of five counts of disorderly conduct.  He was fined $250 and sentenced to one year's probation and seven weekends in jail.  Defendant appeals, contending that the State failed to prove beyond a reasonable doubt that his conduct provoked a breach of the peace, an essential element of the offenses.  See 720 ILCS 5/26-1(a)(1) (West 1994).  We affirm in part, reverse in part, and remand.

All five counts of disorderly conduct were premised on statements of a sexual or threatening nature allegedly spoken by defendant to minor boys.  The complainants, T.H and R.P., were 16 years old at the time of the incidents, while defendant was 47 years old.

The first incident (count I) occurred sometime in February 1993.  T.H. testified that he and his friends were on the north side of the Rushville Square in Rushville, Illinois,

when defen­dant parked nearby.  Defendant asked T.H. why he had parked his car in front of defendant's house a few days earlier.  Defendant then answered his own question, stating that he knew T.H. had attended a party next door and that defendant "knew [defendant's neigh­bors] were all gay."  When T.H. denied attend­ing the party, defendant responded that he would not hold it against T.H., "because he could suck [T.H.'s] dick better than any one of them guys."  T.H. testified that defendant's comments "kind of scared me."  T.H. walked away, and defendant did not follow.  This was T.H.'s first contact with defendant.

The next three incidents (counts II through IV) appar­ent­ly all oc­curred at the Rushville IGA, a grocery store where T.H. and R.P. worked.  However, there was no evidence at trial regard­ing where count V occurred.  Count II arose from an August 1993 encounter between defendant and R.P.  R.P. testified that he was bagging groceries when defendant started talking to him.  Defen­dant placed his arm on R.P. and said, "[Y]ou are good with your hands.  I bet you are good with other things with your hands."  Defendant also invited R.P. to his house.  After this incident, defendant started coming to the IGA on an almost daily basis.  

Count III was based on a November 1993 incident.  Defendant told both T.H. and R.P. "that if [they] let anybody know or told anybody about what was going on that he could--he would take [them] down with him and start rumors" that they were "queer." Count IV arose from an incident that occurred shortly thereafter.  As T.H. was leaving the Rushville IGA, defendant asked him "if [he] had learned to swallow yet."  Defendant then told T.H. that he knew what T.H. drove, where he lived, when he worked, and how to get ahold of T.H. whenever he wanted.

According to the information, the incident underlying count V occurred in December 1993 in Schuyler County, but the testimony at trial established neither the time nor place of this final incident.  On this occasion, defendant asked R.P. where he could find T.H.  When R.P. responded that T.H. was at a party, defen­dant mentioned "there were queers there."  Defendant then asked R.P. if he or T.H. "could suck better."  

 Maxine Logan, the night manager of the Rushville IGA, testified that defendant would circle the store nightly until he walked past the carry-out boys.  T.H. would work in the back room to avoid contact with defendant.  On one occasion, R.P. was unwilling to leave the store alone because defendant had been circling the store.  On another occasion, Logan overheard defen­dant tell R.P. to come to his workplace, "and we will do some things, but you cannot tell anybody."

Defendant denied making any of the statements.  Defen­dant stated the only reason he knew R.P. was because R.P. had vandalized defendant's house. (R.P. admitted he was driving a couple of his friends around when his friends "egged" defendant's car and house.)  Several of defendant's neighbors testified that defendant was a quiet man, who never invited people to his house.   As a preliminary matter, we note that defendant did not file a post-trial motion.  Normally, the failure to raise an issue in a written post-trial motion results in a waiver of that issue on appeal.  
People v. Enoch
, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988).  However, one exception to this waiver rule are challenges to the sufficiency of the evidence.  
Enoch
, 122 Ill. 2d at 190, 522 N.E.2d at 1131-32.  Defendant's claim that the State failed to prove a material allegation (
i.e.
, defendant's conduct provoked a breach of the peace) may be raised for the first time on appeal.  
People v. Depper
, 256 Ill. App. 3d 179, 185, 629 N.E.2d 699, 703-04 (1994).

Defendant was charged under section 26-1(a)(1) of the Criminal Code of 1961, which provides that a defendant commits the offense of disor­derly conduct when he knowingly "[d]oes any act in such unreason­able manner as to alarm or disturb another and to provoke a breach of the peace."  720 ILCS 5/26-1(a)(1) (West 1994).  This court has held that defendant's conduct "must actual­ly bring about a breach of the peace and not merely tend to do so."  
People v. Bradshaw
, 116 Ill. App. 3d 421, 422, 452 N.E.2d 141, 142 (1983).  But 
cf
. 
People v. Ellis
, 141 Ill. App. 3d 632, 633, 491 N.E.2d 61, 62 (1986) ("Although, under most circum­stanc­es, the statute probably does not require that a breach of the peace actually occur as a result of defendant's conduct, the relation­ship between the alleged conduct and the public order must be clearly shown").  It is not neces­sary that the act occur in public, only that defendant's actions disturb the public order.  "A breach of the peace may as easily occur between two persons fighting in a deserted alleyway as it can on a crowded public street."  
People v. Davis
, 82 Ill. 2d 534, 538, 413 N.E.2d 413, 415 (1980).

The term "breach of the peace" defies easy definition.

"The term 'breach of the peace' has never had

a precise meaning in relation to specific con-

duct.  Yet from its early common law origin to

the present it has received a fairly well

defined gloss.  'The offense known as breach

of the peace embraces a great variety of con-

duct destroying or menacing public order and

tranquility.  It includes not only violent 

acts but acts and words likely to produce 

violence in others.'  
Cantwell v. State of
 

Connecticut
, 310 U.S. 296, 308, [84 L. Ed. 

1213, 1220, 60 S. Ct. 900, 905] (1940).  The 

term connotes conduct that creates consterna-

­tion and alarm.  It is an indecorum that 

incites public turbulence; yet violent conduct 

is not a necessary element.  The proscribed 

conduct must be voluntary, unnecessary, and 

contrary to ordinary human conduct.  On the 

other hand, the commonly held understanding 

of a breach of the peace has always exempted 

eccentric or unconventional conduct, no matter 

how irritable to others.  It seems unnecessary 

to add that whether a given act provokes a 

breach of the peace depends upon the accom-

pany­ing circumstances, that is, it is essential 

that the setting be considered in deciding 

whether the act offends the mores of the com-

muni­ty."  
United States v. Woodard
, 376 F.2d 

136, 141 (7th Cir. 1967).

Despite the elasticity of the term, the disorderly conduct statute has withstood first amendment challenges claiming that the statute is vague and overbroad.  See, 
e.g.
, 
People v. Raby
, 40 Ill. 2d 392, 398, 240 N.E.2d 595, 599 (1968), citing 
Woodard
, 376 F.2d 136, with approval.

Here, defendant's disruptive conduct consisted of inappropriate or vulgar sexual remarks.  Language that is vulgar or offensive does not necessarily breach the peace.  See 
Brad­shaw
, 116 Ill. App. 3d at 422, 452 N.E.2d at 142 (defendant's shouting of obscenities outside a tavern was "nothing more than annoying" and did not constitute a breach of the peace); see also 
People v. Douglas
, 29 Ill. App. 3d 738, 742-43, 331 N.E.2d 359, 363 (1975) (defendant did not breach the peace by shouting vulgar­i­ties at police officers).  Generally, speech cannot be criminalized simply because it is offensive.  The State contends, however, that defendant's remarks constituted "fighting words," which are not afforded first amendment protection.

"'There are certain well-defined and narrowly

limited classes of speech, the prevention and

punishment of which have never been thought

to raise any Constitutional problem.  These

include the lewd and obscene, the profane,

the libelous, and the insulting or "fighting"

words--those which by their very utterance in-

flict injury or tend to incite an immediate

breach of the peace.'"  
Beauharnais v. Illinois
,

343 U.S. 250, 255-56, 96 L. Ed. 919, 926-27,

72 S. Ct. 725, 730-31 (1952), quoting 
Chaplinsky

v. New Hampshire
, 315 U.S. 568, 571-72, 86 L. 

Ed. 1031, 1035, 62 S. Ct. 766, 769 (1942).

"Fighting words" are "personally abusive epithets which, when addressed to an ordinary citizen, as a matter of common knowledge, are inherently likely to provoke violent reac­tion."  
People v. Heinrich
, 104 Ill. 2d 137, 145, 470 N.E.2d 966, 970 (1984), citing 
Cohen v. California
, 403 U.S. 15, 20, 29 L. Ed. 2d 284, 291, 91 S. Ct. 1780, 1785-86 (1971).  Thus, fighting words by definition provoke a breach of the peace, such that they satisfy a necessary element of disorderly conduct. 

Were defendant's remarks fighting words?  The victims, T.H. and R.P., did not respond violently to defendant's remarks.  However, words need only be 
likely
 to incite violence, not actually produce violence, to qualify as fighting words.  See 
People of the City of Pontiac v. Klein
, 67 Mich. App. 556, 558, 242 N.W.2d 436, 437-38 (1976) (criticizing the term "fighting words," because "many members of society are not fighters").  Defendant's remarks consisted of crude sexual overtures.  He spoke no abusive epi­thets, although he insinuated that T.H. and R.P. were "queer," an insinuation many people would find offen­sive.  (The record does not reveal the sexual orientation of the victims.)  The parties have not cited, nor have we been able to discover, any case law where crude sexual propositions have been found to breach the peace.

Other forms of harassing or threatening language, however, have been found to breach the peace, even in the absence of abusive epithets.  In 
In re D.W.
, 150 Ill. App. 3d 729, 730-31, 502 N.E.2d 419, 420-21 (1986), this court held that the evidence was sufficient to support a finding that a minor commit­ted disorderly conduct where the minor told a classmate that unless he paid the $5 he owed the minor by lunchtime, the minor would "kick [his] butt."  In 
Davis
, the defendant entered the home of an 81-year-old woman (it was disputed whether the defen­dant was invited).  The woman had previously sworn out a com­plaint against defendant's brother.  The defendant waved sheets of paper at the woman and said, "'If [my brother goes to jail], Miss Pearl, you know me.'"  
Davis
, 82 Ill. 2d at 536, 413 N.E.2d at 415.  The supreme court held that the defendant's vague threat fell square­ly within the conduct pro­scribed by the disor­derly conduct statute, which was intended to guard against "'an inva­sion of the right of others not to be molested or harassed, either mentally or physi­cally, without justification.'"  
Davis
, 82 Ill. 2d at 538, 413 N.E.2d at 415, quoting Ill. Ann. Stat., ch. 38, par. 26-1, Committee Comments, at 149 (Smith-Hurd 1977).  Neither 
D.W.
 nor 
Davis
 discussed whether the threats were fight­ing words.

Here, count III was premised on defendant's threat to "take [R.P. and T.H.] down with [defendant]" and to start rumors that R.P. and T.H. were "queer."  Defendant argues that only threats of immediate physical harm can constitute disorderly conduct.  We disagree.  Threats to destroy a reputation can violate a person's right not to be molested or harassed without justification, and 
Davis
 and 
D.W.
 make clear that the threatened harm need not be immediate.  Defendant's threat, coupled with provocative language, was a form of mental and sexual harassment.  We find the evidence sufficient to support a conviction on count III.

We further find the evidence sufficient to support convictions on counts I, II, and IV.  These counts were not based upon overt threats, but upon unwelcome and offensive sexual remarks that were equally threatening.  Sexual harassment is of such slight social value that it is not afforded first amendment protection.  See 
Trayling v. Board of Fire & Police Commission­ers
, 273 Ill. App. 3d 1, 14, 652 N.E.2d 386, 395 (1995).  Defen­dant's remarks did not convey information but were simply lewd conduct, albeit verbal conduct.  Lewd conduct may constitute disorderly conduct depending on the surrounding circumstances.  See, 
e.g.
, 
People v. Duncan
, 259 Ill. App. 3d 308, 310-11, 631 N.E.2d 803, 804 (1994) (defendant provoked a breach of the peace by urinating in pub­lic).  One relevant circumstance is the young age of the victims.  In determining whether conduct provokes a breach of the peace, it is appropriate to consider the status of the victim.  See 
People v. Trester
, 96 Ill. App. 3d 553, 555, 421 N.E.2d 959, 960-61 (1981) (abusive language directed at police officer did not establish disorderly conduct because police officers have a responsibility to exercise great restraint when dealing with the public); 
Davis
, 82 Ill. 2d at 537-38, 413 N.E.2d at 415 (fact that victim was an 81-year-old invalid was one of the surrounding circumstances supporting a finding of disorderly conduct).  Sexual remarks that an adult might find merely annoy­ing may become alarming and disruptive when directed at minors.

Defendant's remarks may not have incited violence, but it is clear that they disturbed the public order.  T.H. hid in the back room of his workplace to avoid contact with defendant, while R.P. was afraid to leave work alone.  The victims' ability to work and appear in public was infringed by defendant's pattern of harassment.  

We reverse defendant's conviction on count V because the evidence failed to establish where or when the conduct underlying count V occurred.  On the date of trial, November 1994, venue was a materi­al allega­tion that was re­quired to be proved beyond a reason­able doubt along with the other elements of the offense, 
i.e.
, the State was required to prove that the county where prose­cu­tion was brought was the county in which the offense occurred.  
People v. Adams
, 161 Ill. 2d 333, 341-42, 641 N.E.2d 514, 518 (1994).
  The State's com­plete failure to prove venue is fatal to a judg­ment of convic­tion, and the issue may be consid­ered for the first time on appeal.  See 
People v. Carroll
, 260 Ill. App. 3d 319, 328, 631 N.E.2d 1155, 1161 (1992).  We note that section 1-6(a) of the Criminal Code of 1961 has now been amended so the State is no longer required to prove during trial that the offense occurred in any particular county in this State.  Pub. Act 89-288, eff. August 11, 1995 (1995 Ill. Laws 3337), amending 720 ILCS 5/1-6(a) (West 1994).

For the foregoing reasons, we affirm defendant's convictions on counts I through IV.  We reverse defendant's conviction on count V.  Because we are reversing defendant's conviction on count V, and because defendant received a single, undivided sentence on all five counts, we remand for resentenc­ing.

Affirmed in part and reversed in part; cause remanded.

McCULLOUGH and KNECHT, JJ., concur.