State v. Elder, 19 N. M. 393

(No. 1671, September 10, 1914)

STATE OF NEW MEXICO, Appellant, vs. ROY ELDER, Appellee.

(No. 1672, September 10, 1914)

STATE OF NEW MEXICO, Appellant, vs. ROY ELDER, Appellee.

(CONSOLIDATED)

SYLLABUS.

1.   There is nothing in the organic act of the Territory of New Mexico, nor in the laws of Congress relating to said Territory prior to its admission to Statehood in 1912, prohibiting the revival of a law which had been repealed by reference to its title in the reviving act, nor the reviving of an Act which had been repealed by repealing the act which repealed the original act.

P. 399

2.   Article 4, Section 18, of the Constitution of the State of New Mexico, providing that "no law shall be revised or amended; or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full," has no retroative effect and does not apply to nor make invalid or unconstitutional acts or laws passed prior to the admission of New Mexico as a State, which prior act or law does not comply with said section of the Constitution.

P. 400

3.   Article 4, Section 16, of the Constitution of the State of New Mexico providing "The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed, * * *" has no retractive effect and does not apply to nor make invalid or unconstitutional acts or laws passed prior to the admission of New Mexico as a State, which act or law so passed prior to the admission does not comply with the requirements of said section of the Con-

P. 401

4. Article 2, Section 17, of the Constitution of New Mexico providing that the truth may be given in evidence to the jury as a defense in all criminal libel suits, is in conflict with section 22 of chapter 11 of the Laws of 1889, and repeals the latter law in so far as the law of 1889 limits the pleading and the giving in evidence of the truth as a defense in criminal libel suits.

P. 402

5. Where an indictment for libel alleges that the defendant did publish certain libelous matter, this allegation is sufficient, on demurrer to the indictment, as the word "publish", primarily, means to make known; and it need not therefore, be alleged in the indictment that the libel was circulated nor that it was read or seen by a third person.

P. 402

6. Charging a person in a newspaper with being "an unprincipled son and one whom all self-respecting persons can but despise," and, again, charging him with being " a moral coward" and "an imbecile" and "one who has about as much regard for the truth as an infidel has for the Bible," is libelous under subdivisions 2 and 3 of section 7 of the Laws of New Mexico of 1889.

P. 403

7. The statutory definition of libel governs, where there is a statute on the subject, and it is immaterial whether the words alleged to be libelous are libelous per se or not.

P. 404

8. An indictment in libel is sufficient on demurrer if it sets forth the parts of the publication alleged to be libelous; the whole publication need not be set out in the indictment.

P. 404

9. Where an indictment in libel charges that the alleged defamatory matter is false, it is sufficient in law on demurrer to the indictment, and the indictment need not allege that if true the matters were not published with good motives or

justifiable ends, as such negative statement is not necessary in the indictment and is not such a proviso in the law as need be negatived in the indictment, but is a matter of defense on the trial of the case.

P. 404

Appeal from District Court, Curry County; Granville A. Richardson, Presiding Judge. Reversed and Remanded.

IRA L. GRIMSHAW, for appellant.

Court erred in holding that Chap. 13, L. 1905, was ineffectual to revive Libel Law of 1889. Chap. 13, L. 1905; Smith v. Raton, 18 N. M. 513; 3 N. M. 557.

Law of 1889 not void because it embraces within its provisions, more than one subject. Sec. 16, Art. 4 of Const.

Court erred in holding that revived Act of 1889 was unconstitutional because in conflict with Sec. 17 of Art. 2, Secs. 14, 15, 18, 19, 21, 22, Libel Law 1889.

Error in holding that indictment does not allege that circulation of publication was made. 2 Bish. Crim. Pro. p. 361; 2 Bouv. L. Dic., p. 794.

Need not allege that publication was made for purpose and with intent of causing breach of peace. 25 Cyc. 574.

Court erred in holding that matters alleged in indictment did not constitute a crime under Law 1889. Sub-Div. 2, Sec. 7, Act 1889.

JAMES A. HALL, for appellee.

Crime of libel. 26 Ark. 523; 13 Brev. 500; Chap. 13, L. 1905; 5 Pac. 91; 26 Pac. 313; Sec. 22, Act 1889.

Indictments do not charge violation of law. 94 Pac. 419; 10 Enc. P. & P. 487; 22 Cyc. 235; 4 Oreg. 157, 188; 25 Cyc. 575.

Matter charged is not libelous. 88 Mass. 236; Wharton's Cr. L., Par. 1983, Vol. 3; Sec. 9, L. 1889; 6 Ala. 881; 50 N. Y. Super. Ct. 12; 36 La. Ann. 467-8; 24 Tenn. 112; 10 Tenn. 581; 44 Atl. 620; 22 Rev. Rep. 539; 73 Hun. 81; 136 N. Y. 538; 1 Q. B. 524; 93 Md. 48; 6 Ala.

881; 153 N. Y. 214; 25 Cyc. 370; 153 N. Y. 214; 3 City Hall Rec. N. Y. 96; 4 B. & Ald. 95; 1 Barn. 304; 2 W. Bl. 1037; 59 Hun 51; 2 Pennew (Del.) 171; 5 Humphr. (Tenn.) 112; 27 S. C. 29; 94 Pac. 419; 10 Enc. P. & P. 487; 22 Cyc. 235; 4 Oreg. 157, 188; 100 Pac. 257; 102 Pac. 295; 121 Pac. 278; 14 Pac. 410; 34 Pac. 780; 48 Pac. 470; 59 Pac. 9; 62 Pac. 1022; 90 Pac. 586; 24 Pac. 538; 14 Utah 173; 62 Pac. 1022; 8 Pac. 343; 2 Grant 385; 11 Hun 633; 19 Minn. 93.

## STATEMENT OF FACTS.

Roy Elder was indicted for criminal libel, and from an order sustaining demurrers to the indictments, the State appeals. Reversed and Remanded.

. These two cases arose on indictments for criminal libel returned by the grand jury of Curry county in the Fifth Judicial District, against the defendant Roy Elder, for alleged libelous matter published in the St. Vrain Journal, of which the defendant was the publisher and editor. The indictments were brought under Chapter 11 of the Laws of 1889, upon the return of the indictments the defendant, through his counsel, moved to quash: the motion was overruled by the court and subsequently a demurrer was filed to each indictment, which was sustained by the trial court. From the order sustaining the demurrers the state appeals. The cases, except as to the alleged libelous matter set out in the indictments, are identical and will be considered together. The indictments in the two cases, omitting the captions, are as follows:—

"That Roy D. Elder, late of the county of Curry, in the State of New Mexico, on the 13th day of November, in the year 1913, in said county and state aforesaid, unlawfully, feloniously and maliciously contriving and intending to vilify and defame one Arthur E. Curren, did unlawfully, feloniously, wickedly and maliciously compose and publish, and cause and procure to be composed and published, in a certain newspaper called the 'St. Vrain Journal,' published and circulated at St. Vrain in said county and state by Roy Elder, he being the proprietor, publisher and editor of

said newspaper on the day, month and year first aforesaid,. a certain false, scandalous, wicked, malicious, mischievous, and defamatory libel, of and concerning him, the said Arthur E. Curren, containing false, scandalous, wicked, malicious, mischievous and defamatory and libelous words and matters, according to the tenor following that is to say: 'Ingratitude. What would be your definition of ingratitude? To our way of looking at it, one of the coldest blooded cases has just taken place in this county and all self-respecting persons can but despise the guilty one, and that person is no other than our friend the present General Manager of the Clovis News, one A. E. Curren (meaning the said Arthur E. Curren) and the injured party is his poor old father, J. E. Curren. After nursing him (meaning the said Arthur E. Curren) to manhood and giving him a good start in life, he (meaning the said Arthur E. Curren) has made a goat out of the old gent. Here is the story: Arthur (meaning the said Arthur E. Curren) was editor of the News, a Republican paper in Curry county,. changed to a Democratic, and in order to ride the fence, Arthur (meaning the said Arthur E. Curren) sends for the old gent to tide him through what his political difficulties had gotten the News into, and the surprising part of the tragedy is that J. E. Curren would allow himself to be made a goat knowing his unprincipled son Arthur (meaning the said Arthur E. Curren) as he should (for everybody else does) J. E. went his limit to bring the News out of the mire that A. E. (meaning the said Arthur E. Curren) had run it into so deep, but to no avail'—to the great injury, scandal and disgrace of the said Arthur E. Curren, and against the form of the statute in such case made and provided, and against the peace and dignity of the state of New Mexico."

"That Roy Elder, late of the county of Curry in the State of New Mexico, on the twenty-ninth day of January, in the year 1914, in said County and State aforesaid, unlawfully, feloniously and maliciously, contriving to injure, aggrieve, vilify, scandalize and defame the good name, fame, and reputation of one A. E. Curren (whose full and true Christian name is to the grand jurors afore-

said unknown), and intending as much as in him law, to bring the said A. E. Curren into contempt, hatred, infamy and disgrace, did compose, print and publish in a certain newspaper called St. Vrain Journal, whereof the said Roy Elder was editor and publisher, a certain false, scandalous and malicious libel, and did cause and procure to be published in said newspaper, the said certain false, scandalous and malicious libel of and concerning the said A. E. Curren, and of and concerning an article written by the said A. E. Curren in the Clovis News, a newspaper, relative to the judicious expenditure of the annual tax paid to Curry county by the Atchison & Topeka Railroad Company, in which said St. Vrain Journal said article was published, and among other things, certain false, scandalous and malicious words, according to the tenor and effect following, that is to say: 'Our poor, down and out friend Arthur (meaning A. E. Curren) is still grieving his heart out about that printing that has driven one member crazy, and from the above article (meaning thereby the article written by the said A. E. Curren in the Clovis News and reproduced in the St. Vrain Journal) one would judge that the second (meaning the said A. E. Curren) was not far from the route to Vegas. The way Arthur (meaning the said A. E. Curren) writes, the sensible citizens of Curry county would judge that Curry county was composed of a set of imbeciles like himself (meaning the said A. E. Curren), and hadn't sense enough to get out of the rain. Take Arthur Curren (meaning the said A. E. Curren) and size him up from stem to stern, and from the time Curry county first had the misfortune to call him (meaning the said A. E. Curren) a citizen, you will find a living moral coward, a man who has about as much regard for the truth as an infidel has for the Bible, and a man whose life has been a failure and a farce'—to the great damage of the said A. E. Curren, to the pernicious example of all others in like cases offending, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of New Mexico."

The original law under which these indictments were drawn was passed in 1889, and is Chapter 11 of the Ses-

sion Laws of 1889. This law was repealed by Chapter 14 of the Session Laws of 1893, and subsequently revived by Chapter 13 of the Session Laws of 1905, which last mentioned act is as follows:

"That the act of the legislative assembly, * * * approved February 8, 1893, entitled 'An act to repeal an act of the 28th legislative assembly of the Territory of New Mexico,'· entitled "An act to define the offense of libel and affix the punishment therefor," be and the same is hereby repealed, and the said act of the twenty-eighth legislative assembly entitled "An act to define the offense of libel and affix punishment therefor, passed over veto January 30th, 1889," be and the same is hereby revived."

The demurrers filed to each of these indictments are quite lengthy and need not be set out in full. Each demurrer contains 18 grounds. The trial court in sustaining them did not state the ground or grounds upon which they were upheld, and it will be necessary for this court to consider all the grounds of the demurrers. The allegations of the demurrers for our consideration may be divided into three divisions as follows: The indictments are insufficient and demurrable: First, because the law under which they were brought is unconstitutional, not being enacted as required by the Constitution of the state of New Mexico; second, because the libel law is unconstitutional and void, and, third, because even if valid and constitutional, the indictments drawn under said law of 1889 do not charge an offense.

## OPINION.

RAYNOLDS, District Judge (after stating the facts as above). The appellee contends that the provisions of the Constitution, both in regard to the substance of the laws passed prior to the adoption of the Constitution in 1912, and the mode and manner of passing the laws and their form, apply to all laws of New Mexico, whether passed prior or subsequent to the adoption of the Constitution. We cannot agree with the appellee in this contention. Prior to the adoption of our Constitution, there was nothing in the the Organic Act or in

the laws of Congress relating to the territory of New Mexico which forbade the repeal of an act repealing a law and the revival of the original law by such repeal. In fact, it has been expressly held by this court in the case of Milligan v. Cromwell, 3 N. M. 557, 9 Pac. 359, that unless it is made clear by the law repealed in the repealing act that the original law is not thereby to be revived, the original act is revived. The act of 1905, Chapter 13, specifically revived the law of 1889.

Again, it is urged that the law of 1889 is unconstitutional and void, because of Article 4, Section 18, of the Constitution, which provides:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

It is also urged that the law of 1889 is unconstitutional and void because it is in conflict with Article 4, Section 16, of the Constitution, which, among other things, provides:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed."

The answer to these contentions is that the provisions of the Constitution are prospective and not retrospective. Cooley's Constitutional Limitations (5th Ed.) pp 77, 445; 8 Cyc. pp. 735, 744. To hold otherwise would be to repeal all the laws of New Mexico passed prior to 1912 in which the form of the acts and the manner of passing the same do not conform to the method subsequently prescribed by the Constitution, and to bring about a chaotic condition of affairs in the earlier legislation of the territory of New Mexico. Our Constitution provides (article 22, section 4) "All laws of the territory of New Mexico in force at the time of its admission into the Union as a state, not inconsistent with this Constitution, shall be and remain in force as the laws of the state until they expire by their own limitation, or are altered or repealed, * * *" but it nowhere provides that all prior laws not passed in conformity with the regulations made for the passing of laws by the future

Legislatures of New Mexico shall be unconstitutional. The provisions of the Constitution heretofore set out refer to the manner and form of passing laws in the future, and the last provision quoted, Article 22, Section 4, refers to a conflict, if any, in the substance of any prior laws with the Constitution. It cannot be seriously contended that the framers of the Constitution intended that provisions looking to the passage of future laws, noncompliance with which constitutional provisions should render invalid such future laws, could also relate to former laws passed by the territorial assemblies of New Mexico, especially since such intention was not expressed in the instrument itself.

This whole question is well covered in the case of Ex parte Burke, 59 Cal. 8, 43, Am. Rep. 231, where the following language is used:

"At the time the law in question was passed there was no constitutional objection to special and local legislation. This was held by the Supreme Court in the very early case of Ryan v. Johnson, 5 Cal. 87, and the same doctrine is again laid down in the case of People v. C. P. R. R. Co., 43 Cal. 398. When the act was passed it was a valid act, even conceding, for the purposes of the argument, that it was a special law, as is claimed in this case. The question therefore arises, was the act abrogated by the provision of the new constitution referred to above? The language of Section 25, Article 4, is that: 'The Legislature shall not pass local or special laws.' The constitutional inhibition manifestly applies to future and not to past legislation. **3** The provision is purely and simply prospective in its operation, and the words will not justify any other construction. It did not therefore operate as a repeal of acts passed by the Legislature years before the Constitution went into effect, but merely put a stop to all future legislation of that objectionable character. If authority were required in support of this view, it will be found in the following cases: Allbyer v. State, 10 Ohio St. 588; State v. Barbee, 3 Ind. 258; Hingle v. State, 24 Id. 28; Cooley's Const. Lim., 76."

It appears by inspection of the law of 1889 (Chapter 11, Section 22) that the truth in indictments under the

libel law can only be pleaded in justification in certain cases, and that by Article 2, Section 17, of the Constitution it is declared, in the Bill of Rights, that:

"In all criminal prosecutions for libel, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted."

The Act of 1889 therefore is in conflict with the Constitution of 1912 in so far as it limits the inquiry into the truth in certain cases, as a defense in criminal prosecutions for libel, as the declaration in the Constitution extends the right to give the truth in evidence, as a defense, in all cases of criminal libel. The declaration contained in the Constitution being the controlling law, the limitation contained in the law of 1889 is repealed, and the truth may be given as a defense in all prosecutions for libel.

It is contended that the indictments in these cases do not state that the alleged libel was circulated, nor that the matter was read or seen by third persons. We do not deem this contention of any weight, as the word "publish" means, primarily, to make known and has the same significance as the word "circulate"; nor is it necessary to set out in the indictment the phrase that the alleged libelous matter was read or seen by third parties. Words and Phrases, Vol. 7, p. 5847; United States v. Williams (C. C.) 3 Fed. 484, 486.

The charges in the indictment in case No. 1671, as heretofore set forth, among other things, allege that the prosecuting witness "is an ingrate and one whom all self-respecting persons can but despise on account of his actions towards his father," and that he, the prosecuting witness, "is an unprincipled son." The charge in the indictment in case No. 1672 states that the prosecuting witness "is an imbecile," "a living moral coward," "a man who has about as much regard for the truth as an infidel has for the Bible," and "a man whose life has been a failure and a farce." It is contended that these words are not libelous per se, but we deem the contention untenable, as the stat-

ute defines what is libelous, and it is immaterial whether the matter is libelous per se or not.

The only question for this court to determine is whether the alleged libelous matter herein set out comes within the statutory definition. It is conceded that if the statements are libelous, they must come within Subdivisions 2 and 3 of Section 7 of the Laws of 1889, which provides as follows:

"Sec. 7. The written, printed or published statement, to come within the definition of libel, must convey the idea either: (1st.) that the person to whom it refers, has been * * * (2nd) * * * guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society and the natural consequence of which is to bring him into contempt among honorable persons, or 3rd.) * * * Has a moral vice, or physical defect or disease, which renders him unfit for intercourse with respectable society, and as such should cause him to be generally avoided."

Unless the alleged libel is not to be taken in its ordinary and common meaning, it is difficult to understand why such charges as these do not bring the parties so charged into contempt among honorable persons and in effect declare that he has a moral vice. It is urged upon us by the appellee that this language has a humorous aspect and that the articles were a joke not to be taken seriously. We have nothing before us but the language used, which, in its ordinary and common meaning, certainly conveys and must have been intended to convey the idea that the prosecuting witness has been guilty of an act or omission, which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons. This remark also applies to the charge that he is an unprincipled son and that he is a living moral coward and has no more respect for the truth than an infidel has for the Bible. These charges may have been intended to be used in a humorous sense, but, as was aptly said in State v. Brady, 44 Kan. 435; 24 Pac. 948, 9 L. R. A. 606, 21 Am. St. Rep 296:

"The want of actual intent to vilify is no excuse for libel, and if a man deems that to be right which the law pronounces wrong, the mistake does not free him from guilt. Curtis v. Mussey et al, 6 Gray (Mass.) 261; 1 Bish Crim. Law, Sec. 309; Reynolds v. United States, 98 U. S. 145 (25 L. Ed. 244)."

It is urged that the indictment in libel should set out the whole publication, but we believe this ground untenable, as it is sufficient if parts of the publication which are alleged to be libelous are set out in full. 25 Cyc. 578.

Where an indictment in libel charges that the alleged defamatory matter is false, it is sufficient in law, on demurrer to the indictment, and it need not allege that, if true, the matters were not published with good motives and justifiable ends, as such negative statement is not such a proviso in the law as is required to be negatived in the indictment, but is a matter of defense on the trial.

Those other grounds of demurrer, not considered in this opinion, we do not regard as worthy of discussion.

The judgment of the court below is therefore reversed and the cause remanded, with instructions to proceed in accordance with this opinion.