839 P.2d 139

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**David William POWELL,
Defendant–Appellee.**

**No. 13398.**

Court of Appeals of New Mexico.

July 27, 1992.

Tom Udall, Atty. Gen., Joel K. Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Thomas R. Figart, Law Systems of Las Cruces, P.A., Las Cruces, for defendant-appellee.

Hal Simmons, Albuquerque, for amicus curiae New Mexico Press Ass'n & New Mexico Broadcasters Ass'n.

## OPINION

HARTZ, Judge.

Defendant, a teacher at Western New Mexico University, was convicted of criminal libel in magistrate court because of accusations he had made against the university's acting vice-president for academic affairs. He then exercised his statutory right to appeal to district court, where he was entitled to a trial de novo. NMSA 1978, §§ 35–13–1, –2(A) (Repl.Pamp.1988). Defendant moved the district court to dismiss the complaint against him on the grounds that New Mexico's criminal libel statute is unconstitutional on its face and is unconstitutional as applied to the charge against him. The district court granted the motion; the court's judgment held that (1) the statute is unconstitutional on its face, (2) the statute is unconstitutional as it applies to libel of public officials or public figures, and (3) the crime alleged against Defendant was libel of a public figure.

We do not decide whether our criminal libel statute is unconstitutional on its face, nor do we decide whether the alleged victim of the libel was a public figure or public official. We rely on a separate ground alluded to in the letter opinion by the district court and addressed in the parties' appellate briefs.[1] *Cf. Naranjo v. Paull,* 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App.1990) (appellate court can affirm judgment on ground not relied upon by lower court). We hold that the statute is unconstitutional insofar as it applies to a public statement involving a matter of pub-

---

1. The State's briefs do not contend that this ground was not raised below. On the contrary, the State's Brief–in–Chief complains that the district court erroneously applied the public-concern test. The State has not argued, nor do we discern, that our consideration of this issue is unfair to the State.

lic concern and that the alleged public libel in this case involved a matter of public concern. We therefore affirm the district court's dismissal. We first discuss the applicable law and then apply it to this case.

## APPLICABLE LAW

The New Mexico criminal libel statute, NMSA 1978, Section 30–11–1 (Repl.Pamp.1984), reads in its entirety:

Libel consists of making, writing, publishing, selling or circulating without good motives and justifiable ends, any false and malicious statement affecting the reputation, business or occupation of another, or which exposes another to hatred, contempt, ridicule, degradation or disgrace.

Whoever commits libel is guilty of a misdemeanor.

The word "malicious," as used in this article, signifies an act done with evil or mischievous design and it is not necessary to prove any special facts showing ill-feeling on the part of the person who is concerned in making, printing, publishing or circulating a libelous statement against the person injured thereby.

A. A person is the maker of a libel who originally contrived and either executed it himself by writing, printing, engraving or painting, or dictated, caused or procured it to be done by others.

B. A person is the publisher of a libel who either of his own will or by the persuasion or dictation, or at the solicitation or employment for hire of another, executes the same in any of the modes pointed out as constituting a libel; but if anyone by force or threats is compelled to execute such libel he is guilty of no crime.

C. A person is guilty of circulating a libel who, knowing its contents, either sells, distributes or gives, or who, with malicious design, reads or exhibits it to others.

D. The written, printed or published statement to come within the definition of libel must falsely convey the idea either:

(1) that the person to whom it refers has been guilty of some penal offenses;

(2) that he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons;

(3) that he has some moral vice or physical defect or disease which renders him unfit for intercourse with respectable society, and as such should cause him to be generally avoided;

(4) that he is notoriously of bad or infamous character; or

(5) that any person in office or a candidate therefor is dishonest and therefore unworthy of such office, or that while in office he has been guilty of some malfeasance rendering him unworthy of the place.

E. It shall be sufficient to constitute the crime of libel if the natural consequence of the publication of the same is to injure the person defamed although no actual injury to his reputation need be proven.

F. No statement made in the course of a legislative or judicial proceeding, whether true or false, although made with intent to injure and for malicious purposes, comes within the definition of libel.

Although the statute was enacted in 1963, 1963 N.M.Laws, ch. 303, § 11–1, the statutory language is taken almost verbatim from a statute enacted by the territorial legislature in 1889. 1889 N.M.Laws, ch. 11 (codified as amended at NMSA 1953, Rev. Stat. §§ 40–27–1 to –24). Some provisions in the 1889 law are not included in the 1963 version. The only substantive additions to the early statute are the insertion of the first paragraph of Section 30–11–1 and the insertion of the word "falsely" in paragraph D (so that the libelous statement must now *falsely* convey one of the five ideas listed in that paragraph).

Section 30–11–1 was enacted one year before the United States Supreme Court's seminal decision in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11

L.Ed.2d 686 (1964). In that opinion the Supreme Court created a qualified privilege to make defamatory statements relating to the official conduct of a public official. The Court ruled that the Constitution "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. at 725–26; *see Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1984) (Plaintiff must demonstrate "that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement."). Three years after *New York Times* the qualified privilege was extended to defamatory criticism of "public figures." *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

In adopting the qualified privilege, the Supreme Court recognized "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times,* 376 U.S. at 270, 84 S.Ct. at 720. *Hustler Magazine v. Falwell,* 485 U.S. 46, 52, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988), explains:

> [E]ven though falsehoods have little value in and of themselves, they are "nevertheless inevitable in free debate," [*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974),] and a rule that would impose strict liability on a publisher for false factual assertions would have an undoubted "chilling" effect on speech relating to public figures that does have constitutional value. "Freedoms of expression require 'breathing space.'" *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 772, [106 S.Ct. 1558, 1561, 89 L.Ed.2d 783] (1986) (quoting *New York Times, supra,* at 272, [84 S.Ct. at 721]).

This breathing space is provided by a constitutional rule that allows public figures to recover for libel or defamation only when they can prove *both* that the statement was false and that the statement was made with the requisite level of culpability.

On the other hand, defamation that does not come within the *New York Times* privilege is hardly entitled to protection. As the Supreme Court stated in *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964):

> Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity.... [T]he use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality * * * *" *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, [62 S.Ct. 766, 769, 86 L.Ed. 1031]. Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.

The qualified privilege established by *New York Times* has not been limited to defamation actions brought by public officials and public figures. The Supreme Court has also required that a private person—that is, one who is neither a public official nor a public figure—must, at least in some circumstances, prove actual malice to recover presumed or punitive damages for defamation. Although the Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), rejected the view that a private person must prove actual malice to recover compensatory damages for false defamato-

ry statements concerning an issue of public or general interest, the Court held that actual malice must be proved for the private person to recover presumed or punitive damages. The *Gertz* opinion may be read as stating that actual malice must be proved to recover presumed or punitive damages in any defamation suit, but *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 751, 761, 105 S.Ct. 2939, 2941, 2946, 86 L.Ed.2d 593 (1985), clarified that the actual-malice requirement applies only when the defamation of the private person involves a matter of public concern. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16, 110 S.Ct. 2695, 2704, 111 L.Ed.2d 1 (1990) (reading *Gertz* as holding that "for a private person attempting to prove he was defamed on matters of public interest," the states "could not permit recovery of presumed or punitive damages on less than a showing of *New York Times* malice").

The task before us is to translate this law to the context of a criminal libel prosecution. The Supreme Court has supplied substantial guidance for the performance of this task. *New York Times* itself, after noting the universally recognized unconstitutionality of the Sedition Act of 1798, which made it a crime to publish false accusations against the federal government with intent to bring it into disrepute, then wrote, "What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel." 376 U.S. at 277, 84 S.Ct. at 724. The clear implication was that the privilege announced in that decision applied to criminal prosecutions.

The implication was made explicit in *Garrison*. That opinion held that the *New York Times* rule "limits state power to impose criminal sanctions for criticism of the official conduct of public officials." 379 U.S. at 67, 85 S.Ct. at 212. The Court said, "Where criticism of public officials is concerned, we see no merit in the argument that criminal libel statutes serve interests distinct from those secured by civil libel laws, and therefore should not be subject to the same limitations." *Id.*

Subsequent decisions, however, have not explored the scope of the privilege in the context of criminal libel. *Ashton v. Kentucky*, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), the only other Supreme Court decision since *New York Times* to review a criminal libel statute, did not address the *New York Times* privilege; it held that the criminal libel statute under consideration was unconstitutionally vague. Thus, we have no explicit instructions from the Supreme Court regarding the extent of any constitutional privilege against criminal prosecution for defamatory statements involving matters of public concern when the defamed person is neither a public official nor a public figure.

Nevertheless, the reasoning of *Garrison* and *Gertz* compels the conclusion that the Constitution prohibits a conviction of criminal libel for public defamation made without actual malice on a matter of public concern. We infer from those decisions that the interest in protecting free speech outweighs any interest in the imposition of liability (civil or criminal) for such defamation except the interest in compensating private persons for actual injury. To reach this conclusion, we compare on the one hand criminal penalties and on the other hand presumed and punitive damages with respect to (1) the interests served by permitting their imposition and (2) the injury their imposition may cause to First Amendment interests.

One message of *Garrison* is that criminal libel laws serve very little, if any, purpose. The opinion approved the following statement by the reporters of the then-proposed official draft of the American Law Institute Model Penal Code, which explains the absence from the Code of any provision for criminal libel:

"It goes without saying that penal sanctions cannot be justified merely by the fact that defamation is evil or damaging to a person in ways that entitle him to maintain a civil suit. Usually we reserve the criminal law for harmful behavior which exceptionally disturbs the community's sense of security * * * * It seems evident that personal calumny falls in neither of these classes in the

U.S.A., that it is therefore inappropriate for penal control, and that this probably accounts for the paucity of prosecutions and the near desuetude of private criminal libel legislation in this country. * * * " Model Penal Code, Tent.Draft No. 13, 1961, § 250.7, Comments, at 44. 379 U.S. at 69–70, 85 S.Ct. at 213. The Court did not hold that all criminal libel laws violate constitutional rights to free expression. After all, as already noted, it said that false statements made with actual malice enjoy no constitutional protection. *Id.* at 75, 85 S.Ct. at 216. But it clearly signalled the small weight to be given a claimed interest in criminal prosecution. *See Tollett v. United States,* 485 F.2d 1087, 1094 (8th Cir.1973) ("A strong argument may be made that there remains little constitutional vitality to criminal libel laws.").

*Gertz* similarly denigrated any public interest in the punishment and deterrence of defamation uttered without actual malice. In explaining why a defamed private individual could obtain compensatory damages for defamation without meeting the *New York Times* standard, the Court wrote:

> [W]e endorse this approach in recognition of the strong and legitimate state interest in compensating private individuals for injury to reputation.

418 U.S. at 348–49, 94 S.Ct. 2997 at 3011. The Court found no such "strong and legitimate state interest" in punitive damages:

> [P]unitive damages are wholly irrelevant to the state interest that justifies a negligence standard for private defamation actions. They are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence. In short, the private defamation plaintiff who establishes liability under a less demanding standard than that stated by *New York Times* may recover only such damages as are sufficient to compensate him for actual injury.

*Id.* at 350, 94 S.Ct. at 3012. The punishment and deterrent purposes of criminal

libel statutes are not entitled to substantially greater weight.

Moreover, criminal penalties certainly pose as much of a threat to First Amendment interests as do punitive damages. Although some language in *Gertz* and *New York Times* may suggest otherwise, we are confident that the Supreme Court would have no quarrel with that proposition. *Gertz* stated that jury discretion—both to "assess punitive damages in wholly unpredictable amounts" and "selectively to punish expressions of unpopular views"—"unnecessarily exacerbates the danger of media self-censorship." *Id.* But the deterrent effect of "unpredictable" damage awards arises from the possibility of very high awards. A criminal penalty—even if there are clear statutory limits on the permissible extent of punishment—could well seem as foreboding as a high damage award. Also, it would be unrealistic to assume that a jury in a criminal trial—unlike one in a civil trial—could not be swayed by the unpopularity of the views expressed by the alleged libeler.

The language of concern in *New York Times* explicitly compares the threat of criminal penalties to the threat of damage awards. The Supreme Court said that "[t]he fear of damage awards under a rule such as that invoked by the Alabama courts here may be markedly more inhibiting than the fear of prosecution under a criminal statute." 376 U.S. at 277, 84 S.Ct. at 724. The Court noted the lesser burden of proof in civil cases, the threat of multiple lawsuits for the same article or advertisement, and the absence of any maximum for punitive damage awards. *Id.* at 277–78, 84 S.Ct. at 724. The Court's point, however, was not to denigrate the threat of criminal sanctions but to emphasize the threat of civil liability. In any event, even if some prospective defendants, such as a corporation owning a newspaper, may be more concerned about punitive damages than criminal sanctions, the converse surely holds for most individuals, be they newspaper employees or other citizens, such as Defendant here.[2] Perhaps there is no cer-

---

**2.** Although the United States Supreme Court has occasionally reserved judgment on whether to draw a distinction between media and nonmedia defendants with regard to First Amendment

tain way to compare the chilling effect from high punitive damage awards with that from the imposition of criminal sanctions, but one would be hard-pressed to say that the threat of criminal sanctions would create less undesirable self-censorship.

■ In short, we infer from *Garrison* and *Gertz* that in those circumstances when the *New York Times* qualified privilege precludes the assessment of punitive damages for defamation, it also precludes criminal penalties.[3] A false defamatory public statement involving a matter of public concern can be subject to criminal penalty only if made with actual malice.[4] *Cf. Commonwealth v. Wadzinski*, 492 Pa. 35, 422 A.2d 124 (1980) (actual malice required to impose sanctions on speech in political campaign); *Vanasco v. Schwartz*, 401 F.Supp. 87 (S.D.N.Y.1975), *aff'd without opinion*, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976) (same).

We now apply this law to the case before us.

## APPLICATION TO THIS CASE

The New Mexico criminal libel statute requires that the offending statement be "false and malicious." Is a statement that is "malicious" under the statute necessarily made with "actual malice"? A statement is made with "actual malice" if it is made "with knowledge that it [is] false or with reckless disregard of whether it [is] false or not." *New York Times*, 376 U.S. at 280, 84 S.Ct. at 726. Section 30–11–1 states:

The word "malicious," as used in this article, signifies an act done with evil or mischievous design and it is not necessary to prove any special facts showing ill-feeling on the part of the person who is concerned in making, printing, publishing or circulating a libelous statement against the person injured thereby.

As the State concedes, the statutory definition is not the equivalent of "actual malice" as defined in *New York Times* and its progeny. *See Rosenblatt v. Baer*, 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966) ("ill will, evil motive, [or] intention to injure" does not amount to actual malice).

■ Nevertheless, the State contends that any constitutional defect in the statute can be cured by simply requiring the trial court to instruct the jury on "actual malice" when the Constitution so requires. The State's position boils down to three arguments. The arguments are not persuasive.

■ First, the State argues that jury instructions are procedural, not substantive, law and therefore are fully within the judiciary's power. We disagree. The addition of an element to a criminal offense is a matter of substantive law. To adopt the State's argument would be to say that in every matter tried to a jury, the judiciary is not bound by statutes in setting forth to the jury the applicable law.

■ Second, the State correctly points out that "[w]here a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which upholds its constitutionality." *New Mexico State Bd. of Educ. v. Board of Educ.*, 95 N.M. 588, 592, 624 P.2d 530, 534 (1981). Yet, the

protections, *see Milkovich*, 497 U.S. at 20 n. 6, 110 S.Ct. at 2706 n. 6, Justice White has noted that "[n]one of our cases affords such a distinction; to the contrary, the Court has rejected it at every turn." *Dun & Bradstreet*, 472 U.S. at 773, 105 S.Ct. at 2952 (White, J., concurring). Furthermore, even if we concern ourselves only with the impact on the media of a criminal libel law, prosecution of a private person who provides information surely can affect the media's access to information on matters of public concern. We assume that this impact on the media is a substantial reason why media groups have submitted amicus briefs in this case in both the district court and this court.

3. This argument was raised by the defendant in *People v. Heinrich*, 104 Ill.2d 137, 83 Ill.Dec. 546, 470 N.E.2d 966, 971 (1984), *appeal dismissed*, 471 U.S. 1011, 105 S.Ct. 2010, 85 L.Ed.2d 294 (1985). But the court did not reach the merits of that issue, apparently because it was not convinced that punitive damages would have been prohibited in the circumstances. Moreover, the criminal statute in that case, although labeled as a "criminal defamation" statute, was restricted to "fighting words." *Id.* 83 Ill.Dec. at 550, 470 N.E.2d at 970; *see note 4.

4. We do not address criminal punishment for "fighting words" that may contain a libelous component. *See Heinrich, supra* note 3.

requirement of "actual malice" cannot be found in any rational construction of the language of Section 30–11–1 defining the requisite intent for criminal libel. Because the statute defines the requisite intent, this is not a case where one can argue that statutory silence on the state-of-mind element of the offense creates an ambiguity. *See State v. Ortega,* 112 N.M. 554, 562, 817 P.2d 1196, 1204 (1991). Moreover, it would stretch the imagination beyond human limits to say that there is an ambiguity in the criminal libel statute that permits it to be construed to require actual malice when the Constitution so requires but not to require actual malice otherwise. Nothing in the statute could be read to distinguish libel of public figures and officials and libel on matters of public concern from other cases of libel with respect to an actual-malice requirement.

Finally, the State makes the interesting argument that it is asking this court "merely to read the statute together with the Constitution." The State cites two New Mexico cases which it contends support this view.

The first is *State v. Elder,* 19 N.M. 393, 143 P. 482 (1914). In that case the court considered the original 1889 criminal libel statute. Section 22 of the statute lists four circumstances in which the truth of a statement may be shown in justification. The section concludes, "In other cases the truth of the facts stated in the libel can not be inquired into." *Elder* held that limiting the inquiry into the truth in certain cases violated Article 2, Section 17 of the Constitution, which declared:

> "In all criminal prosecutions for libel, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted."

*Id.* at 402, 143 P. at 484. Essentially, all *Elder* did was strike unconstitutional language from the 1889 statute. Moreover, insofar as *Elder* recognized the application of Article 2, Section 17 to criminal libel prosecutions, it was not adding an element

to the statutory definition of the offense. Rather, it was recognizing a constitutional defense to the criminal charge. This is in keeping with the judicial practice of recognizing defenses—such as duress, entrapment, and insanity—that do not appear in statutes but are required by the common law or constitutional mandates. *E.g., Esquibel v. State,* 91 N.M. 498, 501, 576 P.2d 1129, 1132 (1978) (duress is "an historical and widely recognized defense").

The second case relied upon by the State is *Reese v. State,* 106 N.M. 498, 745 P.2d 1146 (1987). The pertinent holding in that opinion is that "a defendant's knowledge as to the identity of the peace officer assaulted [is] a necessary element of [aggravated assault on a peace officer and battery on a peace officer]." *Id.* at 499, 745 P.2d at 1147. The lead opinion, which represented the views of two of the three members of the court's majority, states:

> Although [the pertinent] sections do not require knowledge of the victim's identity as an element of the respective crimes, we nonetheless conclude that scienter is a necessary element of these crimes, and thus indispensable to the jury's consideration of the case. We base this conclusion not on our reading of the pertinent statutes, but on requirements of constitutionally mandated due process.

*Id.* The third member of the majority, Justice Ransom, stated that knowledge was required as a matter of statutory construction; he found no need to rely upon constitutional grounds. Two members of the court dissented. Thus, the majority of the court did not adopt the view that the judicial branch could add an element to an offense if so required by the Constitution. *See Primus v. Clark,* 58 N.M. 588, 594–95, 273 P.2d 963, 967 (1954) (it is not accurate to characterize plurality opinion as reflecting the views of the court). Moreover, the two members of the court who adopted that view cited no authority, either from New Mexico or from any other jurisdiction, to support their position. Because our review of the law in other jurisdictions reveals that courts have no power to add an element to an offense, we assume that such is also the law in New Mexico.

Our principal authority is the United States Supreme Court. The matter was reviewed at length by Chief Justice Taft in *Yu Cong Eng v. Trinidad*, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059 (1926). Speaking for a unanimous court, Chief Justice Taft refused to construe a Philippine statute in order to render it constitutional. He wrote:

We fully concede that it is the duty of a court in considering the validity of an act to give it such reasonable construction as can be reached to bring it within the fundamental law. But it is very clear that amendment may not be substituted for construction, and that a court may not exercise legislative functions to save the law from conflict with constitutional limitation.

*Id.* at 518, 46 S.Ct. at 623. He quoted Chief Justice Waite in *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1875), as follows:

"We are, therefore, directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. * * *

"It would certainly be dangerous if the legislature could set a net large anough [sic] to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."

*Id.* 271 U.S. at 519–20, 46 S.Ct. at 623–24. He also quoted Justice Miller in *Trade–Mark Cases*, 100 U.S. 82, 98, 25 L.Ed. 550 (1879):

"[I]t is not within the judicial province to give to the words used by Congress a narrower meaning than they are manifestly intended to bear in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body."

*Id.* 271 U.S. at 520–21, 46 S.Ct. at 624. Chief Justice Taft concluded:

The effect of the authorities we have quoted is clear to the point that we may not in a criminal statute reduce its generally inclusive terms so as to limit its application to only that class of cases which it was within the power of the legislature to enact, and thus save the statute from invalidity.

*Id.* at 522, 46 S.Ct. at 624–25.

As additional support for this proposition in the specific context of criminal libel statutes, we note that when other jurisdictions have confronted the question of what to do about a criminal libel statute that does not require proof of actual malice, none has inserted an actual-malice requirement into the statute. The debate has been whether to strike the statute in its entirety, as in *Gottschalk v. State*, 575 P.2d 289 (Alaska 1978), *Weston v. State*, 258 Ark. 707, 528 S.W.2d 412 (1975), *Eberle v. Municipal Court*, 55 Cal.App.3d 423, 127 Cal.Rptr. 594 (1976), and *Commonwealth v. Armao*, 446 Pa. 325, 286 A.2d 626 (1972), or whether to hold only that the statute is unconstitutional as applied to defamation that cannot constitutionally be punished without proof of actual malice, as in *People v. Ryan*, 806 P.2d 935 (Colo.) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 177, 116 L.Ed.2d 140 (1991). The four decisions that struck the criminal libel statutes in their entirety all explicitly rejected the invitation to construe the statutes so as to render them constitutional.

▪ In short, we have no power to revise the language of the New Mexico criminal libel statute and insert an element of the offense that has not been present since the statute's initial enactment more than a century ago. We hold that Section 30–11–1 is unconstitutional as applied to a charge of libel predicated on public statements that involve matters of public concern.

▪ Finally, we consider whether the criminal charge against Defendant was predicated on public statements involving matters of public concern and therefore must be dismissed. Whether a statement involved matters of public concern is an issue of law to be decided by the court. *See Furgason v. Clausen*, 109 N.M. 331,

334, 785 P.2d 242, 245 (Ct.App.1989) ("Determination of whether a privilege applies to material alleged to be defamatory is a question of law to be decided by the Court.")

"In considering a defense motion to dismiss [a complaint], the district court accepts as true the factual allegations set forth in the [complaint]." *United States v. Besmajian,* 910 F.2d 1153, 1154 (3rd Cir. 1990). The criminal complaint alleges:

The undersigned complains and says that on or following the 25th day of July[,] 1990, in the County of GRANT, State of New Mexico, the above-named defendant(s) did (here state the essential facts): Publically [sic] accused me as follows:

1. illegally changed grades;

2. performed dishonest and unprofessional act;

3. concealed illegal activities;

4. undermined the administration of President Gomez;

5. sabotaged President Gomez' administration;

6. party to abuses and illegal activities;

7. apologist for and protector of wrongdoers;

8. protector of lawbreaking athletes;

9. unethical replacement of bogus grades;

10. responsible for academic treason

William David Powell has published the above and has damaged me[,] contrary to Sections(s) 30–11–1 NMSA 1978.

Although the complaint does not identify the persons involved, the State's Brief–in–Chief describes the Complainant as acting vice-president for academic affairs for Western New Mexico University and Defendant as a teacher at that public institution.

At the outset we note that the complaint alleges a public libel. The complaint states that the Defendant "[p]ublically [sic] accused me."

■ Does the alleged libel involve a matter of public concern? In general, the answer requires examination of the "content, form, and context" of the statement. *Dun & Bradstreet,* 472 U.S. at 761, 105 S.Ct. at 2946 (quoting *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)). Although sometimes one cannot determine whether a statement involves a matter of public concern until all the evidence has been offered at trial, *cf. Connick v. Myers,* 461 U.S. at 146, 103 S.Ct. at 1689 (questions by employee of district attorney about office morale and other matters of only personal interest do not address matters of public concern), some cases are easy and require little in-depth inquiry.

For example, in *Coats v. Pierre,* 890 F.2d 728, 732 (5th Cir.1989), the court said merely:

Dr. Coats maintains that he was terminated in part because of assertions by him that professors at Prairie View showed favoritism in grading toward athletes and pre-med students and exchanged grades for sex. Indiscreet or not, such allegations do go beyond individual personal disputes and grievances to touch upon matters of public concern.

In *Pollard v. City of Chicago,* 643 F.Supp. 1244, 1249 (N.D.Ill.1986), the court declared:

The second topic of speech identified by Pollard is also a matter of public concern. Pollard alleges he spoke to Dickinson of supervisors in the Department who abused their positions. Pollard spoke of 1) false mileage reports, 2) misuse of City equipment, 3) misuse of City funds and 4) an unusual log selling venture. These matters clearly implicate the public interest in the public pocketbook. Taxpayers have an undeniable interest in the efficient execution of public business without waste and illegality.

Similarly, the Minnesota Court of Appeals recently wrote in *Hunt v. University of Minnesota,* 465 N.W.2d 88, 94 (Minn.Ct. App.1991):

Hunt argues Kegler's statement regarding her integrity is actionable because it does not relate to an issue of public concern and reasonably can be interpreted as stating facts about Hunt. We dis-

agree. Readily available information about the qualifications of any public employee is in the public interest. Here, the Intergovernmental Coordinator was a high level official who would represent the County at the legislature. The Intergovernmental Coordinator would be responsible for persuading the legislature to spend millions of tax dollars in Hennepin County. Speech regarding the qualifications of any candidate for this position would be in the public interest. Thus, Hunt's qualifications for the position of Intergovernmental Coordinator were a matter of public concern. [Citations omitted.]

▉ Here, the complaint alleges statements relating to the performance of the administration of a public institution of higher learning. This subject matter is a matter of public concern. When a criminal libel statute does not require proof of actual malice, the Constitution prohibits prosecution under the statute of public statements that involve matters of public concern. Because the accusation against Defendant is of conduct that cannot constitutionally be prosecuted under Section 30–11–1, we dismiss with prejudice the criminal libel charge against Defendant.

CONCLUSION

We affirm the district court's dismissal with prejudice of the charge against Defendant.

IT IS SO ORDERED.

BLACK, J., concurs.

DONNELLY, J., concurs in part, dissents in part.

DONNELLY, Judge (concurring in part; dissenting in part).

I concur in the decision affirming the order of the district court which dismissed the charge of criminal libel against Defendant and determined that New Mexico's criminal libel statute, NMSA 1978, Section 30–11–1 (Repl.Pamp.1984), is unconstitutional on its face. I disagree, however, with the rationale relied upon by the majority to arrive at its decision and which bases

its decision in part upon grounds not argued before the district court. I would limit our decision to the arguments presented to the district court and affirm the district court's ruling based upon its determination that our criminal libel statute is unconstitutional as it relates to Defendant herein, and that it conflicts with the protections accorded under the First Amendment to the United States Constitution.

The order of the district court striking down Section 30–11–1 found, among other things, that this state's criminal libel statute "is unconstitutional on its face and * * * is unconstitutional as it applies to public officials or public figures and that the alleged crime charged herein involved a public figure * * *." The majority opinion does not address the grounds relied upon by the district court, and instead concludes "that the statute is unconstitutional insofar as it applies to a public statement involving a matter of public concern and that the alleged public libel in this case involved a matter of public concern." *Id.* at 396–97, 839 P.2d at 140–141.

At the hearing in the district court on Defendant's appeal de novo from the magistrate court, the text of the material alleged to constitute criminal libel was not introduced into evidence, no stipulations were offered, and no testimony was presented. At best, we can glean some concessions concerning the facts from the briefs filed herein. The allegations of the criminal complaint also provide some insight to the alleged factual issues. However, neither the briefs nor the record herein contain the full text of the alleged libelous publication nor provide sufficient evidence to permit a factual determination of the truth or falsity of the statement in question. Similarly, the record is insufficient to permit a determination of whether the alleged defamatory statement, if false, was published with "actual malice" as required under *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Moreover, absent the full text of the alleged defamatory material in the record and an indication as to the manner of its publication, it is difficult to determine as a matter

of law whether the publication in question involved an issue of public concern. *See Furgason v. Clausen,* 109 N.M. 331, 785 P.2d 242 (Ct.App.1989) (whether publication involves a matter of public concern is a question of law). Under *Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 761, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985), whether speech addresses a matter of public concern must be determined by the " 'content, form, and context' " of the publication as revealed by the record. (Quoting *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).) In the district court, only legal argument was presented in support of Defendant's constitutional challenge to Section 30–11–1.

Despite my disagreement with the rationale relied upon by the majority to affirm the result reached by the district court, an analysis of the language of our criminal libel statute, Section 30–11–1, I conclude, indicates that the district court correctly determined that the statute is facially inconsistent with the protections accorded under the First Amendment to the United States Constitution. A statute is constitutionally overbroad and facially invalid if it encompasses constitutionally protected, as well as unprotected, speech. *See State v. Gattis,* 105 N.M. 194, 730 P.2d 497 (Ct.App. 1986); *City of Seattle v. Huff,* 111 Wash.2d 923, 767 P.2d 572 (1989) (en banc); *see also Gottschalk v. State,* 575 P.2d 289 (Alaska 1978); *People v. Ryan,* 806 P.2d 935 (Colo. 1991) (en banc).

The principal defect in Section 30–11–1 is that the statute permits an individual to be convicted of the offense of criminal libel by showing that the statement alleged to be defamatory was false and that the publication by Defendant was made "without good motives and justifiable ends." § 30–11–1. The term "malicious" is defined in the statute as an act done "with an evil or mischievous design." *Id.* These statutory provisions omit any requirement that the statement be proven to have been published by Defendant with "actual malice." The constitutional requirement of "actual malice" necessitates proof beyond a reasonable doubt that the statement was false and

that Defendant published such statement either knowing that it was false or published the statement with a reckless disregard of whether such statement was false. *Garrison v. Louisiana.* Thus, the statute as worded permits criminal prosecution of constitutionally protected speech as well as unprotected speech. Criminal libel statutes are subject to the same constitutional limitations as civil libel laws where criticism of public officials or public figures is concerned. *See id.; see also People v. Heinrich,* 104 Ill.2d 137, 83 Ill.Dec. 546, 470 N.E.2d 966 (1984).

The definition of "malice," as used in our criminal libel statute, was based upon the common-law definition of malice as set forth in the New Mexico Constitution, Article II, Section 17, and provides, in part:

> In all criminal prosecutions for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted.

N.M. Const. art. II, § 17 (Repl.Pamp.1992).

Although "malice" is an element required to be proven under our criminal libel statute, the term "malicious" as embodied in Section 30–11–1 is at odds with the requirement of proof of "malice" as set forth by the United States Supreme Court in *Garrison* in criminal libel proceedings. Section 30–11–1 defines the term "malicious" as signifying "an act done with evil or mischievous design." In contrast with this definition, the Court held in *Garrison* that, in order to establish the offense of criminal libel, the prosecution must prove that the statement in question was false and that the statement was published with " 'actual malice,' " i.e., the defendant published the statement knowing " 'that it was false or with reckless disregard of whether it was false or not.' " *Id.* 379 U.S. at 67, 85 S.Ct. at 212 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964)).

The common-law definition of "malice" which involves publication of a false state-

ment while motivated by ill-will or evil purpose has been overtaken by decisions of the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Garrison. See also Ashton v. Kentucky,* 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966). These decisions recognize that the protection accorded by the First Amendment of the United States Constitution precludes the imposition of either criminal or civil liability without proof that the alleged defamatory statement involved (1) a matter of public concern, (2) the statement was false, (3) was published with actual malice, and (4) that the person alleged to be defamed was a public official or public figure. *Garrison v. Louisiana.* As observed by the Court in *Garrison,* the "actual malice" requirement necessary to establish a claim of civil libel is also applicable to a charge of criminal libel:

> In [*New York Times,*] we held that the Constitution limits state power, in a civil action brought by a public official for criticism of his official conduct, to an award of damages for a false statement "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S., at 279–280, [84 S.Ct. at 725–26]. At the outset, we must decide whether, in view of the differing history and purposes of criminal libel, the *New York Times* rule a⸱⸱⸱ limits state power to impose criminal sanctions for criticism of the official conduct of public officials. We hold that it does.

*Garrison v. Louisiana,* 379 U.S. at 67, 85 S.Ct. at 212.

The distinction between the type of malice required under Section 30–11–1 to prove a charge of criminal libel and that recognized by the Court in *Garrison* clearly renders New Mexico's criminal libel statute facially invalid. I agree that this variance cannot be cured by promulgation of a jury instruction as urged by the state. Jury instructions may not properly modify the elements of a crime where the elements of the offense have been prescribed by the legislature. *See People v. Ryan.*

Although the protection accorded under the First Amendment for freedom of speech and press does not protect every publication, such as obscene, fraudulent or untrue defamatory statements published with actual malice, the Supreme Court in *Garrison* makes clear that "actual malice" is a necessary element of proof in prosecutions for criminal libel where the complainant is a public official or public figure and the statement involves a matter of public concern. 379 U.S. at 67, 85 S.Ct. at 212. In the case before us, as shown by the complaint, the complainant is a "public official." While the courts in some states in determining the validity of their criminal libel statutes have applied such laws differently depending upon whether the person alleged to have been libeled was a "public official," "public figure," or "private person," *see* Janet Boeth Jones, Annotation, *Validity of Criminal Defamation Statutes,* 68 A.L.R.4th 1014 (1989), I conclude that Article II, Section 17 of the New Mexico Constitution requires proof of the same standard of malice in any prosecution for *criminal* libel when the publication involves a matter of public concern, irrespective of the status of the person alleged to have been defamed.

I concur in upholding the decision of the district court determining that Section 30–11–1 is constitutionally invalid.